Council, Oriana, James Fife again on behalf of Mr. Owino. Contrary to the view of the district court and the government, refusing to lie to the embassy officials is not deliberate obstruction of removal efforts, authorizing suspension of the reasonable period to effect removal. Nor can the removal period be suspended without complying with the minimum due process requirements in the regulations, which the government here utterly failed to do. Without that suspension, the government has no defense to Mr. Owino's ad vitis claim, so he should be released after his 42 months of civil detention. Why is it not judicially predictable when his detention will come to an end? In other words, he's not being held indefinitely. The question is really going to be resolved, is it not, when this court rules? Your Honor, in a sense, every detention, even Mr. Zadvitas' detention, would come to an end at some point. His case would reach a resolution. Either Lithuania would grant him citizenship or it would not. Simply saying that there is some conceivable end, that we think that something will happen, is not what Zadvitas was talking about. They're talking about... Well, what did Prieto say? Prieto, and I know Your Honor is familiar with that line of cases as I am. Don't assume that. Yes. We always forget. Well, Your Honor, what's important about Prieto and Casas Castrion and Juf are that in all three of those cases, there was a specific procedural posture required that there was an appeal pending, there was discretionary detention, and third, most importantly, there was a judicial stay. That is what's lacking here. This case does not fall under Prieto because there is no judicial stay. This court has denied Mr. Owino a stay. So he has... How does that cut? I mean, the judicial stay, at least, said he can be held in place so he can't be removed from the country and taken beyond the jurisdiction or otherwise prejudiced. Without the stay, it seems to me that he's in a weaker, not a stronger position. And in any event, in other words, why would that be a dispositive reason to say there's no stay, so therefore he is mandatorily released because it's become indefinite? Not mandatorily released. I'm just saying that because there is no stay, he is just a typical run-of-the-mill Zydvitas case, which we handle dozens of those. We handle hundreds of those a year. He's just a typical Zydvitas case, which means that ICE, since the stay was lifted, ICE had a reasonable time. They had statutorily 90 days to remove him. But the Supreme Court said because things come up, we'll give you six months. It's now been over a year since that time passed, and they have not removed him. Thirty-two months, is that right? Thirty-two months total, but part of that time is covered by the temporary stay under the general rule. But since the stay was lifted, or actually the permanent stay was denied by the court. So your argument is that they should have removed him from the country and that he should not be in detention? That's right, Your Honor, because there was now a final removal order under the regulations. They had the duty to remove him within those 90 days. They failed to do so. Does he have to cooperate with a removal procedure? Of course he does. Absolutely, Your Honor. That is required by statute and regulation that he must cooperate. But the only non-cooperation the government has cited is his refusal to lie to Kenya and say he wants to go back to Kenya. So where would they have removed him to? Well, he would have been removed to Kenya, his native country, where he has a cat claim outstanding. Okay, so I'm still trying to understand. If they had done what you suggest, why you still wouldn't be here arguing for some relief to prevent that removal? There's various reasons why detainees are not able to be removed to their country. As I cited in my briefs, the Inspector General found that there were numerous reasons why countries refuse. One of them, this is about one of the most frivolous that I've seen, Kenya saying, we won't take him back unless he says, I want to come back. I mean, it's a very peevish reason. Well, what's next? If he only says pretty please with a cherry on top? This is an unreasonable refusal. Just like- What is the government, I'm just trying to understand the posture. If they had gone ahead and said, all right, we're going to remove him to Kenya, and they you'll be out of the country. What would his remedies have been at that point? Well, Your Honor, his remedies would be that he could continue his petition for review in this court. But he could be in Kenya, meanwhile. He would be in Kenya, which is, of course, what he doesn't want to do. Exactly. But he hasn't- It would have prevented his from being tortured there, arrested and tortured, while we're sitting around deliberating on whether or not he should get some kind of relief. I agree, Your Honor. And that's exactly another condition which the court talked about in Casas Castrion, another reason which makes the person in indefinite detention. In Casas Castrion, the court said, well, for instance, a reason the person is not removable under Zadvidas would be, for instance, the country has no repatriation treaty, or he is subject to mandatory relief under our law. Now it could be true that Mr. Owino is entitled to mandatory relief under our law. He's entitled to cat deferral. In which case, he again does not come within the Prieto reasoning. He is Zadvidas case, and Casas Castrion specifically pointed to that instance as not being part of that. On a different subject, he's indicated that he wants his passport back. Who's got his passport? He lost his passport when he was arrested, Your Honor. And- Do the cops have it? No, it's gone missing. And what he was trying to do was trying to get a police report that the passport was missing so that he could submit it to the Consulate General in Los Angeles so that he could get a renewal passport. And then he could go to some other country. Correct. That's why he needed the renewed passport was so that he can apply. As Your Honors know, in the record, I included some dozen and a half letters from countries where Mr. Owino has applied for asylum. He's not trying to stay in the United States. He's trying to go to any other country that will accept him. But as his brother has received asylum and his parents have received asylum, he wants – he's not trying to – he's not refusing to leave the United States. He's refusing – he doesn't want to go back to Kenya where he was tortured and where he will be subject to further persecution. If we were to send this to mediation, could somehow something be worked out to get him his passport and have him on his way? Your Honor, I think that Mr. Owino is being – let me just take that example because you've picked that one. He had a police – he needed to get a police report in order to file it with the consulate. ICE refused to fax the sheriff's – a request to the sheriff to get the police report. They refused to do that. It's ICE that's impeding his efforts. He's trying the best he can from incarceration to obtain asylum in another country. He's applied to 16 different countries or more and to the United Nations High Commissioner for Refugees to try to find another place to go. If he were released and he was able to, on his own, effect removal, I'm sure he would succeed. But he's being impeded by his conditions. And so he's far from being non-cooperative. He's done extraordinary things in order to try to get himself removed from the United States. His simple refusal to lie – that's the only thing the government can point to – is that he will not lie to Kenya and say, I want to go home. Those were the very words of the Kenyan official. He must say he wants to go home. He doesn't want to go home to where he's going to be tortured – arrested and tortured. He'll go anyplace else that – where he can get asylum. The fact that his other family members have achieved asylum in Europe shows that he probably has a very good chance. He was only given a fair opportunity to do that. Why don't you save the rest of your time for rebuttal? Thank you. Good morning, Your Honor. Sam Bedley for the government. Your Honor, you raised a point about if he were returned to Kenya, he could face torture there. But it was this court that denied his stay – his request for stay. And that's why we're here. It's not clear we made a decision that he wouldn't be subject to torture, but my question was trying to figure out what the posture would have been if counsel – as counsel was arguing – seemed to say, you could have gone ahead and removed him, and then we wouldn't be here, at least on the current issues. Okay. And I was trying to posit to him, but the theory is that he doesn't want to be removed to Kenya. So we would be here on some set of circumstances, it seems to me. I'm just trying to sort it all out. Okay. Well, first of all, I would just point out, if this case were remanded, then all of these issues would be moot, because then we would be in the posture of Friedo or Casas, and he would have an opportunity for a bond review with an immigration judge, because then we would be back in 1226 territory – Section 1226. But as far as this argument that he's being asked to lie, I think this is a semantic trick, because the best analogy I can think of is if I call the dentist and say, I would like to have an appointment with the dentist, and it isn't saying that I'd like to see the dentist. It's that I am requesting – I'm requesting an appointment. Well, his intention is more than semantics. He does not want to return to Kenya. His contention is he'll be tortured if he's sent back. Well, Your Honor – So it's more than semantics. Well, Your Honor, if that is a real – If I were in his shoes, I wouldn't say, I want to go back to Kenya. Yes. Your Honor, if that is a real concern – I hope I'm not begging to question her, but if that is a real concern of the courts, that he would possibly face torture on return to for a stay – Well, when granting stays, they come up before our motions panel, they're handling hundreds of them, and they expect this thing – they're not saying he's not going to be tortured. They may just be saying, we don't have enough evidence at this time, the merits panel should consider it. So don't say that because a panel of our motions, which is dealing with these things, hundreds of them at a time, that it has any significance other than they wouldn't grant the stay. Well, I don't mean to point the finger. I might have suggested in terms of a solution, if that is the court's concern today, then maybe there should be a reconsideration of his sua sponte, of his request for a stay, because then he would be entitled to an IJ bond hearing if there's a stay in place. If that's what the court's concern is, then of course he doesn't want to go back because he faces possible torture. That's my only suggestion, that there might be a solution there. Otherwise, it's just that he will not request it. He has a history of refusing to make an application. Twice he refused to sign the application. This is just another way of refusing to make an application. Just so I understand what you're suggesting, there are so many permutations, and even though I thought I had a handle on it recently in a trio of cases, I have to say, these permutations are confusing to us as judges. So the concern I have is, you've now said if we remanded under Prieto, he would be entitled to a bond hearing. Yes, Your Honor. All right. Now you're suggesting we would also, we would have to issue a stay before he'd be entitled to a bond hearing? No, no. If it were not remanded. If it were not remanded, then that would be, okay. I'm not suggesting that. No, I understand. You're just giving, I appreciate your, we're trying to figure out. I think the case is closest to Diouf in that it's, we're in Section 1231 territory, and in Diouf, the court stated that they were not looking at the issue of whether the custody reviews were adequate, and we're still in that situation here. There has been no challenge to the custody reviews. That would be the next issue, because that's all he gets. Just focusing on the Zadvydas type claim, what is the strongest evidence the government argues that you haven't had cooperation from him on his removal, so that therefore the delay doesn't offend due process? Well, first of all, the pattern, Your Honor. This is twice he refused to sign the application. Then when he did sign the application for submission, in his interview, whatever it was he said to the consulate, whatever language they were speaking, whatever the nuances are of that language, whatever he did, he discouraged them from issuing the travel documents that the U.S. needs to send him back, and that's what was reported to our, by the consular officer, that since he's not willing, or he doesn't want to, or whatever the language is, since he does not want to go back pending his appeal, we will not issue the travel documents until the appeal is over, or until he says, I'm willing to, I want to, I request, I demand that I go back. Counsel, what about this contention that ICE is not willing to help him get his passport? That is completely, I have never heard that, Your Honor. I've been in contact with ICE officers. I understand that he has been applying to several countries to try to get, to go to other countries, but he has no basis for going to any of these other countries. They have all refused, but I have no, I don't think, I don't know of any factual basis for these claims. This is a new claim that ICE has been preventing him from getting the paperwork. Instead, what it was, Your Honor, in this case, was that he was saying, oh, the reason they won't issue me travel documents, meaning the Kenyan government, is because I don't have a passport, or because I don't have a police report, and so on. So we kept, I kept asking the ICE officer to go back to the consulate and ask, and he said, no, that has nothing to do with why we're not giving him a travel document. Now the story has evolved into, oh, we won't give him these things so he can't go to other countries. I have no, I know of no factual basis for that claim, but that's a new claim, Your Honor. You know, if we follow the government's position in the previously argued case, and say that there should be a remand for kind of re-adjudication under the Real ID Act, then what happens is he's stuck in detention, and is, if that takes three years, is he in detention for three years? Yes. Your Honor, then he would be entitled to a bond hearing under the CASAS. On remand, he would be entitled to a bond hearing in front of an immigration judge. But the government can't give him a bond hearing unless we either remand or issue a stay? Yes, Your Honor. All we have are the custody reviews that are done by ICE at this time, under Section 1231. To get an IJN, we have to do something affirmative. Yes, Your Honor. That was a rhetorical question. Okay. So, what do you recommend, what is the government's first recommendation, preferred recommendation? My understanding is you want it to remand under PREADA. Yes, Your Honor. And the bond hearing would follow from that? Yes, Your Honor. All right. Okay. Is that an absolute right to a bond hearing if we remand under PREADA, or is it still a discretionary type situation? Well, no, it would be mandatory under, I believe it would be under CASAS. That he gets the bond hearing? Yes, Your Honor. And at the bond hearing, are the issues, the sort of standard issues about danger to community or flight risk, or are there other issues in the applicable standard? Your Honor, under CASAS, the Ninth Circuit stated that the burden would be on the government to show that he's a flight risk or a danger to the community, that that's a difference in the normal bond hearing. Okay. All right. All right. If there are no more questions. All right. Thank you very much. Thank you, Your Honors. I wanted to ask one more question. You don't think just sending this to mediation to sort all of this out would help? I thought about that, Your Honor. I don't see that. I mean, the government really does want to send him back to Kenya, and I don't know what it is we could compromise on. Well, only on this passport problem. If he could get a passport and could go to Paris and join his brother or whatever. I don't know that he doesn't have his passport, Your Honor. I don't really know. From what I understand, again, we have full motivation to get him to any country other than outside the United States. I can't believe that we're preventing him from getting the documents that he needs to leave. But you don't know that this could be all discovered in mediation. It could all be. Well, certainly, Your Honor. If that's the case, that ICE is preventing him from getting a passport or anything he needs to get out of this country, which would shock me, then I would... I suppose you don't need a mediator to have a conversation with counsel in the hallway and find out what's going on there. Yes, Your Honor. I would take care of that today if I found that that was the case. Thank you. All right. Okay. Well, thank you very much. Thank you. I appreciate it. Are you willing to share with counsel what you have about the passport? Yes, Your Honor. It's right there in the record. I don't know how, Mr. Betz, we can say this is a new claim. Why don't you all work that out in the hallway, and you can let us know if you've resolved it. Your Honor, it was stated in a declaration by Mr. Aruino in the record at pages 82 and 83 of the excerpts of the record. Okay. This is not a new claim. It's something that was raised months ago. The simple fact is there was no bond available to Mr. Aruino. He's in a worse situation than anyone else. If he's not entitled to Zitvidus relief, he's also not entitled to CASAS relief. Because why? Because, Your Honor, in the post-CASAS cases before the immigration judges that I'm familiar with, the immigration judges are asking for the motion for a CASAS hearing to attach a copy of the stay order. If there is not a stay order from this court, they deny a bond hearing saying we lack jurisdiction. And I've had several cases like that. There must be a stay. There must be a judicial stay from a petition for review, as Prieto said. I thought the other request was that we remand for another hearing and that he could then automatically apply for a bond. And the government would have the burden. He can't apply for a CASAS bond. I mean, as far as I understand the line of cases and the way the immigration judges are interpreting them, they require a stay from the Ninth Circuit in relation to a petition for review. And that's been denied here. It hasn't been issued. I can tell you right now, if he applies to the immigration judge in El Centro, he will be denied. The judge will not have a hearing because he says you don't have a stay. If the order's not attached, they check the docket, and they say you have no stay, you don't get a hearing. All right. Well, that's an issue we can address. I just want to point briefly to Suretse Kama is exactly the same situation here, only Mr. Ueno did not say he did not want to go. He just refuses to say that he does want to go. The government claims that there's nothing that he refused in the past. The refusal before, as I pointed out, was a mistake. He thought by signing the forms that he was going to waive his appeal. That was before the removal period started. That's when a stay was in effect, the temporary stay. That can't be obstruction when the stay is already in force. He then, now this is most egregious. The day the return was due, ICE went to, after two years, they went back to Mr. Ueno, asked him to sign forms after two years of doing nothing. They asked him to sign forms. He says, can I talk to my attorney first? They didn't allow him to do that. They issued the I-229, the warning for failure to depart. That same day, it was attached as an exhibit to the return that was filed that same day. When I told Mr. Ueno that is a mistake, signing the application form is not a waiver of his appeal, he filled out the forms, offered them to the deportation officer who refused to come and retrieve them. That's all in a declaration in the record. This was drummed up to create a non-cooperation defense. We're familiar with the record. Okay, thank you. All right. Thank you, counsel. We appreciate the argument. Mr. Ueno, thank you very much for being there. I don't know, you don't want to be there, but I'm glad you're able to see the proceedings. The case just argued is submitted, and we will be in adjournment.
judges: Fletcher B. , Fisher, Gould